1

```
 1              FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION
 2

 3    IN RE:                     Case No. 08-31796-bjh11

 4    Dorado Beckville
      Partners I, L.P.          Chapter 11
 5
                                Date: 4/15/2009
 6

 7    (DEBTOR)                   TIME:  1:22 P.M.

 8
                        VOLUME 1 OF VOLUME 1
 9      HEARING BEFORE THE HONORABLE BARBARA J.HOUSER,
                  UNITED STATES BANKRUPTCY JUDGE
10

11    A P P E A R A N C E S:
12

13
        Richard McCoy Roberson
14      Gardere,Wynne & Sewell
        1601 Elm St., Suite 3000
15      Dallas, TX 75201
        214-999-4955
16      rroberson@gardere.com

17
           Dorado Beckville Partners I, L.P.
18         5950 Berkshire Lane
           Suite 1650
19         Dallas, TX 75225
           (Debtor)
20

21      Howard Marc Spector, P.C.
        12770 Coit Road
22      Banner Place, Suite 1100
        Dallas, TX 75251
23      (214) 365-5377
        (214) 237-3380 (fax)
24      hspector@howardmarcspector.com

25
```

EXHIBIT

"A"

1       Brian N. Hail
        Gruber Hurst Johansen & Hail LLP
2       1445 Ross Avenue, Suite 2500
        Dallas, TX 75202
3       (214)855-6800
        (214)855-6808 (fax)
4       bhail@ghjhlaw.com

5           Impact Equity, LLC
            (Creditor)
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           THE COURT:  All right.  That brings us to

2    Dorado Beckville Partners, L.P.

3           MR. ROBERSON: Good afternoon, Your Honor,

4    Rich Roberson, Marcus Helt, Andrew Spaniel with

5    Gardere on behalf of Dorado Exploration, Ben

6    Mesches's who is appellate counsel to Dorado is

7    also here.

8           THE COURT:  Very well.

9           MR. SPECTOR:  Brian Hail, Steve Wacoviak

10   and Howard Marc Spector on behalf of the Impact

11   Entities.  Your Honor, Mr. Hail and Mr. Walkowiak

12   are really going to take charge of this hearing,

13   and I'm quite sick, so I'm going to be the one

14   just coughing soundly in the back.

15          THE COURT:  I'm sorry that you're sick.

16   All right.  We ready to proceed?

17          MR. ROBERSON: Your Honor, I believe we

18   are ready to proceed.  At the lunch hour we

19   received an objection to certain evidence that we

20   had filed about three weeks -- almost three weeks

21   ago now.  It appeared what I saw at lunch to be an

22   objection to our witness and exhibit list which

23   obviously you don't have witness and exhibit lists

24   in motions for Summary Judgment, but the system at

25   the office was working, it cranked out a witness

1    and exhibit list.  When I got back to the office

2    at lunch I found there was an objection to the

3    Affidavit of Mr. Schmidt that we filed along with

4    our Response to the Motion for Summary Judgment.

5    I think we ought to take that up first before we

6    proceed.

7           THE COURT:  All right.  I'll be honest.

8    I've not seen it.  I was unaware of any objection

9    either.  When was it filed?

10           MR. ROBERSON:  It was filed sometime

11    around noon today.  While I've got the podium, if

12    the Court will permit me, obviously we object to

13    it as late filed.  The Court gave us a scheduling

14    order several weeks ago, a very tight turn-around

15    time.  We have had recently a Motion to Strike

16    that was filed on almost 22 days notice moved off

17    because of scheduling issues.  I think that this

18    objection is late, should have been filed sometime

19    ago, and when filed, it should have been filed

20    properly and denominated an objection to the

21    Summary Judgment evidence, not an objection to the

22    witness and exhibit list.

23           MR. HAIL:  First of all, with regard to

24    the -- I'm not sure  -- we received today an

25    Amended Witness and Exhibit List for this hearing,

1   this Summary Judgment hearing today.  That was

2   somewhat confusing to us.  We called over there

3   and I think -- personally, I've got somewhat of a

4   belt and suspender situation, but still, it's

5   obviously concerning.  We're not going to try to

6   live testimony or exhibits at this hearing so  --

7           THE COURT:  Well, let's focus on the

8   issue as to you as to opposed to  --

9           MR. HAIL:  Yeah, I know, and that goes to

10   that issue.

11           With regard to the  --  in the reply to

12   the Response, not the initial Motion for  --  his

13   Motion for Summary Response, reply back to that or

14   Response and reply back to that, it was in the

15   latest filing of Dorado that they attached

16   Mr. Schmidt's Affidavit.

17           We made some limited objections to his

18   Affidavit.  I don't think there was any scheduling

19   that the Court spoke to with regard particularly

20   to any Affidavit that had been filed.

21           THE COURT:  Well, but noon before a 1:15

22   hearing you think it appropriate timing of the

23   filing of a document?

24           MR. HAIL:  That was  -- frankly, what I

25   had thought actually was that it was actually

1  attached to the Motion to Strike, and I clarified

2  that this morning with Mr. Wacoviak.  It was my

3  misunderstanding, and then when I found out it was

4  actually attached to the Reply to the Response,

5  that's when I said we need to definitely get an

6  Objection on file then.

7          THE COURT:  Well, I'm not following.  So,

8  when was the Affidavit actually filed?

9          MR. HAIL:  It would have been filed  --

10  let me see here  --  March 27th, March 27th in

11  connection with your Reply to Response.

12          THE COURT:  Thanks.  And so why is it

13  that you would wait 18 days to respond, or to put

14  me on notice?  Put aside surprising the other

15  party, but  --

16          MR. HAIL:  Well, two things.  First of

17  all, as I said, it was my misunderstanding that it

18  was attached to another Motion that had been

19  filed.  I'm going  --  my Blackberry is off but I

20  think it still may pick up.  I'm going to take it

21  back over here.

22          THE COURT:  Please.

23          MR. HAIL:  I found it attached to an

24  Amended Motion to Strike which had been filed

25  right  --  matter of fact, maybe the same day or

1    just within a day or so.

2            When I clarified that this morning, then

3    I said, "We need to get it filed."

4            In addition to that, it is really    --

5    it's important but very narrow objection, so I

6    mean, all we're essentially doing is objecting to

7    a few legal conclusions or statements made without

8    foundation by Mr. Schmidt in his Affidavit.  It's

9    fairly narrow issues.

10            THE COURT:  Well, that may be, but help

11    me understand why at noon on the day of the

12    hearing when frankly, I pushed off another hearing

13    that the parties set without my permission today

14    because I was only going to get your response

15    according to Mr. Spector after inquiry Monday.

16            Now, if I didn't have time this week

17    between Monday and 1 o'clock Wednesday to review a

18    Response, why would anybody think it's okay to

19    wait until 1 o'clock or noon with a 1:15 hearing

20    in order to file even a narrow paper?

21            MR. HAIL:  I think it would be best    --

22    and I understand Your Honor's timing concern,

23    that's a very valid point.  I think, as I said, it

24    is fairly narrow issues and only to the extent

25    we'll see what Mr. Roberson argues with regard to

1    Mr. Schmidt's Affidavit, I may just have a couple

2    small rebuttal points along those lines, and he

3    may make some statements that are clearly

4    conclusions or made without foundation with regard

5    to the investigations in Panola County and the

6    Justice Department.

7         I think it's a fairly minor part of this

8    proceeding today, to be honest with you, but you

9    know, I think we'll see --

10        THE COURT:  Do you have a copy for me?

11        MR. HAIL:  Yes, Your Honor.

12        THE COURT:  Well, let's move on and see

13   if they raise any of these issues.

14        MR. ROBERSON:  Very well, Your Honor.  I

15   have one minor point to bring to the Court's

16   attention with respect to this Objection.

17        If I heard Mr. Hail right, I think he

18   said he thought it was attached to their Response

19   to our Motion to Strike.  That Response hasn't yet

20   been filed and it is not due to be filed until

21   tomorrow pursuant to the agreement with

22   Mr. Spector.  Originally, it was going to be filed

23   on Monday.  Mr. Spector asked us for a short

24   extension apparently because he's ill and we gave

25   it to him, so we haven't seen the Response to the

1  Motion to Strike.

2      MR. HAIL:  If I misstated that, what I

3  believe I had stated was I believe it had been

4  filed in connection with the Motion to Strike, the

5  Amended Proof of Claims of pretty much

6  contemporaneously with the Response, so, anyway,

7  just to clarify that.

8      THE COURT:  Fair enough.

9      MR. ROBERSON:  Your Honor, I don't want

10  to beat a dead horse, but it's our Motion  --

11      THE COURT:  Then don't.  Let's just --

12      MR. ROBERSON:  Very well, Your Honor.

13      THE COURT:  --  go on.

14      MR. ROBERSON:  We're ready to proceed,

15  Your Honor.  May I approach?

16      THE COURT:  You may.

17      MR. ROBERSON:  Judge, what I've handed

18  the Court I've handed counsel copies of the trial

19  aids that we're going to use, we're attempting to

20  use the Court's electronic gizmo system, and

21  hopefully it'll continue to work until the end,

22  but if it doesn't, we have extra copies.

23      THE COURT:  The old-fashioned way?

24      MR. ROBERSON: The old-fashioned way. Your

25  Honor, these for your benefit and for the benefit

1    of counsel are excerpts of the various exhibits

2    attached to our Motion for Summary Judgment and a

3    Response, and we've obviously narrowed down to a

4    very small stack of paper what started out as a

5    very large stack.

6         Before I get started, first I want to

7    wish the Court a Happy Anniversary.  One year ago

8    today we filed this case.

9         THE COURT:  Maybe I should wish you a

10   Happy Anniversary.

11        MR. ROBERSON:  Let me summarize our

12   argument, and then I'll go into the body of the

13   argument.

14        First, indemnity was pled in the state

15   court lawsuit, it was not dismissed or nonsuited.

16        THE COURT:  But only indemnity as to

17   attorneys' fees?

18        MR. ROBERSON:  No, Your Honor, we plead

19   indemnity broad, as I'll show you here in a

20   moment.

21        THE COURT: Okay.

22        MR. ROBERSON:  We believe that it was

23   pled, it was pled broadly.  It is subject to the

24   Mother Hubbard  clause of the Final Judgment.  As

25   the Court knows, the Mother Hubbard clause says,

1    "Anything not expressly granted is denied."

2         Indemnity was pled; it was not expressly

3    granted, and therefore, I think it was denied.

4         Secondly, indemnity was pled in the State

5    Court.  It was neither nonsuited or dismissed, but

6    it was not presented to the Jury.  Under the Texas

7    Rules of Civil Procedure, if you have a live

8    pleading or present evidence and fail to present

9    it to the Jury, that cause of action is waived.

10        THE COURT:  What Rule is that?

11        MR. ROBERSON:  It's Rule 279, Your Honor.

12        Thirdly, if indemnity was not pled, we

13   believe there's more than sufficient evidence that

14   it was, it is barred from later assertion because

15   it was a compulsory counter-claim and is barred by

16   res judicata if not pled by the party later

17   asserting indemnity, and I'll demonstrate that

18   here in a moment.

19        Lastly and most importantly, this

20   indemnity provision clearly is limited to claims

21   by third parties against the indemnitee, not by

22   claims by and between the indemnitee and the

23   indemnitor which is what we have here.

24        Moreover, this indemnity provision has

25   certain limitation to it, as most indemnity

1    provisions do. It's limited to claims arising from

2    the engagement under the Letter Agreement which

3    was an engagement to provide investment banking

4    services, or pursuant to the engagement.  And the

5    claims cannot be the subject of bad faith or

6    willful misconduct.

7         As I'll show you here in a moment, the

8    Jury found that there was unclean hands and

9    willful misconduct of two of these parties, and we

10   believe that willful misconduct and unclean hands

11   are bad faith and a misappropriation of trade

12   secrets which is what the Jury found as a willful

13   act.

14        Therefore, we think a combination of

15   Rooker-Feldman, res judicata, Texas law bar all of

16   the claims asserted in the original Proof of Claim

17   and in the Amended Proof of Claim, save and except

18   a very small portion of attorneys' fees which

19   we'll talk about here in a second.

20        Let me give the Court a bit of

21   background.  If you recall, pursuant to an Order

22   this Court issued in I believe early December of

23   2008, Dorado Exploration superceded the trial

24   court judgment by putting up approximately $1.3

25   million in cash and delivering to Impact 5 percent

1   of the common shares of Impact.

2          You'll recall on February 17th, I'm not

3   sure where the Court was because we did it by

4   telephone, the Court requested a status conference

5   to try to determine how much time we needed to go

6   to trial.

7          At that point in time there was a

8   discussion about what we were going to try because

9   what we were going to try would determine how much

10  time we needed to try it.

11          The Court asked me to forward to it, to

12  you, a copy of an Attachment to the original Proof

13  of Claim.

14          Your Honor, Slide 1 which is before the

15  Court both on Screen and on the first page of the

16  stack I handed you is the Attachment to the

17  original Proof of Claim.

18          We discussed that during the status

19  conference, and you asked the question:   "What are

20  we going to try?"

21          And after discussion, what you were told

22  was: "We are going to try A-5 which the first

23  highlighted section of this Attachment and B-5."

24          Before we concluded that day, Mr. Spector

25  advised you that the Impact Group intended to add

1   as indemnity claims the Judgment that Dorado took

2   against Impact which is approximately $400,000.

3          You instructed  -- we advised the Court

4   we thought it was late.  Obviously, that's a

5   subject of a Motion to Strike we'll hear later,

6   and you instructed Mr. Spector to get that on file

7   by I believe by the following Friday which he did.

8          Also, a part of the original Proof of

9   Claim was a schedule that breaks down the various

10   legal fees which are in  -- were A-5 in the

11   original Proof of Claim into various categories.

12   The Court can see at the top before the hatch line

13   in the middle of the page these are the total

14   costs incurred by Impact, $734,000, and then below

15   that you can see there's a break-down of a portion

16   of those fees that relate to Panola County.

17          Below that in part of the two highlighted

18   sections you see the total cost WBH, that's

19   Mr. Heyn, one of the Impact Claimants, and then

20   below that you see the total cost of JVC, that's

21   Jack Calce.

22          This was part of the original Proof of

23   Claim, and it gives us guidance as to what was

24   incurred and when it was incurred, and we'll come

25   back to that here in a moment.

1          THE COURT:  All right.

2          MR. ROBERSON:  On March the 4th about

3    three weeks after that status conference, we had a

4    hearing on a Motion to Compel.  The Court will

5    recall, there were issues with certain legal

6    invoices that had been presented.  We took the

7    position that they were improperly redacted.  We

8    came to the Court, the hearing essentially turned

9    into a status conference.  The Court suggested

10   that we needed to try to narrow the issues and

11   ordered us to proceed through a Summary Judgment

12   process which obviously we're here on today.

13         Just prior --  three or four days prior

14   to that hearing, the Impact entities had amended

15   their Proof of Claim.  Slide 3, please.

16         Slide 3, Your Honor, there's actually

17   four pages of it.  We took the original Attachment

18   to the original Proof of Claim and blew it up into

19   a chart and landscape format, but essentially each

20   of the elements in this Chart correspond to

21   elements in the original Chart with 7 exceptions

22   which I'll get to here in a minute.

23         As the Court can see, Item 1, Item 2,

24   Item 3, Item 4 all reference, use the term

25   "Pursuant to the Final Judgment."  They're

1   referring to the Final Judgment in State Court.

2        Go to the next page, please.

3        Item 6 through 12 are the new items that

4   were added just prior to the hearing on the Motion

5   to Compel, and these 7 categories are the various

6   elements of Dorado's Proof of Claim  --  excuse

7   me, Dorado's Judgment against Impact.

8        Again, as you can see, referenced in

9   virtually every category to "Pursuant to the Final

10  Judgment."

11       Next page, please.

12       Items 10, 11, 12 at the top deal with the

13  indemnity claim.  And then Items 13 to the end of

14  this exhibit are all part of the original, have

15  just been renumbered.

16       Let's go to the last page, please.

17       And, Your Honor, you can see all the way

18  to Item Number 21, problems on the right were

19  Mr. Spector's efforts to assist us I think and the

20  Court identifying who had each of these claims,

21  whether it was Mr. Heyn, Mr.  ** Calce or Impact

22  itself.

23       Your Honor, when we got to that hearing

24  on March the 4th, we were attempting to try to

25  figure out  --

1        THE COURT:  Let me just ask a question.

2   20 and 21 are also new, they were not in the

3   original Plan?

4        MR. ROBERSON:   20 and 21 were separately

5   claimed by Mr. Heyn and Mr. Calce in their own

6   Proofs of Claim.

7        THE COURT:  In their own Proofs of Claim?

8        MR. ROBERSON: Yes.  And, Your Honor, if

9   we can go back one entire slide, I think I'll show

10  you where those numbers come from.  One more page.

11       THE COURT: Yeah, I think it's the

12  attorneys' fees there.

13       MR. ROBERSON:  Yes.  And both Mr. Heyn

14  and Mr. Calce filed their own Proofs of Claim with

15  this very same Attachment.

16       THE COURT:  All right.

17       MR. ROBERSON:  Your Honor, at the hearing

18  the Court inquired where we were, told the Court I

19  thought we had an Agreement to try to take these

20  attorneys' fees is what I thought we were down to

21  and put them in the pockets.

22       What I heard at that hearing was that

23  Impact orally asserted that they were entitled to

24  indemnity for all 21 subparts of the Amended Proof

25  of Claim which I just went through.

1    The Court suggested that we needed to go

2  through the Summary Judgment process which we now

3  have done.

4    So, prior to that hearing, leading up to

5  that hearing, I thought we were talking about

6  attorneys' fees, and these new counts at that

7  hearing we learned that they were seeking

8  indemnity on all 21 counts.

9    Since that time  --

10    THE COURT:  But really, the difference

11  is, seeking indemnity on the Judgment that they

12  got against you is irrelevant.  At least as I

13  understand, they're not really seeking indemnity

14  on that, they're seeking indemnity from you with

15  respect to the Judgment you got against them, or

16  Dorado got against them.

17    MR. ROBERSON:  Your Honor, I thought that

18  until we got to that hearing, but what I heard at

19  that hearing was, "We are seeking indemnity for

20  everything, Judgment Dorado got against them, the

21  Judgment they got against Dorado, all the legal

22  fees associated with --

23    THE court:  But it makes no sense to

24  indemnify for a Judgment that you got against you.

25    MR. ROBERSON:  I agree with you, Your

1    Honor.

2           THE court:  I mean, they don't need that,

3    they've already got a Judgment against you.  An

4    Indemnity Judgment is only a second Judgment for

5    the same amount of money.  I guess I'll leave that

6    for them, but that's at least not what I

7    understood.  I thought that they were seeking

8    essentially the new indemnity argument, if you

9    will, was that Dorado was obligated to indemnify

10   them for the Judgment obtained against them.

11          MR. ROBERSON:  Your Honor, and that was

12   my understanding as I walked to the podium at that

13   hearing.  As I walked away from the podium

14   following that hearing  --

15          THE COURT:  You heard something

16   different?

17          MR. ROBERSON:  I heard something totally

18   different which was, "We're seeking indemnity for

19   everything."  So, we have briefed it that way, and

20   I would agree with the Court, part of that's

21   nonsensical, but we did brief it.

22          Now, since that time, and maybe it's a

23   retrenchment of position or change of position,

24   I'm not sure, or maybe it's just a mistake, but

25   the Impact claimants in their Response to our

1    Motion for Summary Judgment and in their Motion

2    for Summary Judgment say on Page 21, "Claimants

3    seek only indemnification for fees and expenses

4    incurred in connection with proceedings which

5    occurred in State Court and pursuant to the

6    specific Indemnification Agreement articulated

7    herein."

8           And what they're talking --   the

9    articulated Indemnity Agreement is obviously the

10   one we're talking about here, so   --

11          THE COURT:  What page   --  you said Page

12   21, but of what document?

13          MR. ROBERSON:  Impact's Response to our

14   Motion and their Cross-Motion.

15          THE COURT:  OkaY.

16          MR. ROBERSON:  So, again, it could be a

17   change of position, it could be going back to the

18   position that we heard  --  or that we saw in the

19   original Proof of Claim, it could be a mistake,

20   but we were  --  the original Proof of Claim was

21   indemnification for attorneys' fees, we had a

22   status conference, we added  --  the counts

23   related to the Judgment.  We had a hearing on the

24   4th, the Motion to Compel.  It went to  --  in my

25   mind, it went to 21, and I'm not sure whether

1    we're now back to just attorneys' fees.

2         THE COURT:  Well, let's clarify that

3    right now  --

4         MR. ROBERSON:  Very well.

5         THE COURT:  --  because no point in

6    spending a lot of time on things they aren't

7    seeking.

8         So, Mr. Hail, what is it that you're

9    seeking?

10        MR. HAIL:  I was going to poll with

11   reference to see what we referred to.  Sound like

12   it may have been a mistake, I don't know what the

13   context of that was.  We're seeking indemnity for

14   all the amounts we set forth in our Amended Proof

15   of Claim recognizing that certain of those

16   amounts, the positive Judgment of Impact back

17   against Dorado is now to appeal.  You know, we

18   certainly asserted  --

19        THE COURT:  Well, it's all subject to

20   appeal.

21        MR. HAIL:  Well, we have a recovery

22   subject to appeal.  We've set  --  otherwise,

23   we're seeking recovery for just in broad

24   categorical categories:  We've got the  --

25        THE COURT:  Well, no, just how do you

1    seek indemnity for a Judgment that you obtained?

2            MR. HAIL:  It  --

3            THE COURT:  That's not a claim against

4    you.  That was your claim against them.

5            MR. HAIL:  No, it's not a claim against

6    you, but it's, you know, damages or losses

7    incurred in connection with our representation of

8    Dorado to the extent that something that is the

9    subject of indemnity which I think it could be

10    broadly wide enough to do that.

11            THE COURT:  But you have a Judgment.  Why

12    --

13            MR. HAIL:  We do have  --

14            THE COURT:  What difference does that

15    make as an indemnity claim versus a Judgment?

16            MR. HAIL:  Well, let me say this.  It may

17    not make any difference, I think just being a

18    prudent practitioner, we certainly want, you know,

19    on a timely basis to assert indemnity for all the

20    claims that we would have the right to.

21            We're not seeking to  --  as we said

22    before, for purposes of a trial or even for

23    purposes for any Summary Judgment, we're not

24    questioning that amount, should have been 776 or

25    976 or 576, those type of issues are being dealt

1  with by the parties on appeal, just talking about

2  the actual amount of damages, and of course, there

3  was stock amount.  Both sides are saying, "Well,

4  it should have been zero," and we're saying it

5  should have been higher.  Those are not the things

6  that we'll be dealing with here in this Court  --

7          THE COURT:  No, I understand that.

8          MR. HAIL: -- either today or at the

9  trial.

10          THE COURT:  So, you're really seeking

11  indemnity for a Judgment that you've already

12  obtained against them, so you want Dorado to

13  indemnify you from a Judgment you've already

14  obtained against Dorado?

15          MR. HAIL:  Well, we haven't recovered on

16  that, but we've incurred those losses.

17          THE COURT:  But you'll either collect on

18  the Judgment  --  the indemnity's meaningless.

19  You'll either collect on the Judgment or you

20  won't.  And if you can't collect on the Judgment,

21  then the Indemnity is not worth the paper it's

22  printed on.

23          MR. HAIL:  Well, but to the extent there

24  is money is in this Court upon which to collect

25  against which there may or may not be money --

1          THE COURT:  There isn't money in this

2     Court at this point that I'm aware of.

3          MR. HAIL:  I thought there was some money

4     --

5          THE COURT:  Well, there's the

6     supersedeas, but you got that for the Judgment,

7     and that's in the State Court, I thought.

8          MR. HAIL:  Yeah, the supersedeas does

9     directly relate to the State Court.

10          THE COURT:  Okay.  So, what money do you

11     think is here?

12          MR. HAIL:  Maybe Mr. Spector can

13     elaborate on this, if Your Honor would indulge me.

14          THE COURT:  Of course.

15          MR. SPECTOR:  It's the reserve on the

16     claims that they've reserved.

17          THE COURT:  But they didn't reserve for

18     the Judgment you got against them.

19          MR. SPECTOR:  That's correct.  They

20     reserved $800,000 for our Proofs of Claim, and

21     what I think Mr. Hail is saying, if you wouldn't

22     mind me confirming this with him?

23          (COUNSEL CONFER)

24          MR. SPECTOR:  The way I would explain

25     this is, Impact clients are asserting indemnity

1    claims for the same claims that were asserted in

2    the State Court.  It's simply a new cause of

3    action that we assert is not covered by the trial.

4        It's not that we're looking for indemnity

5    for the Judgment that they have against us, as

6    Your Honor pointed out, that doesn't make any

7    sense, but we are asserting an indemnity claim for

8    all the damages we have suffered, many of  --

9        THE COURT:  But why?  The Judgment's been

10   superceded.  I mean, this makes no sense to me at

11   all, and everybody, listen.

12       MR. SPECTOR:  Because at least in theory.

13       THE COURT:  The Judgment's been

14   superceded.  So, if you prevail on appeal, you're

15   going to get paid.

16       MR. SPECTOR:  Correct.

17       THE COURT:  You don't need the indemnity

18   claim.

19       MR. SPECTOR:  But if we don't prevail on

20   appeal, I think Mr. Hail, and he correct  --

21       THE COURT:  You think that I'm going to

22   give you money that the State Court on appeal

23   takes away from you?

24       MR. SPECTOR:  You might under an

25   indemnity theory if we lost in the State Court

1    under those claims.  I think that's what Mr.  --

2         THE COURT:  Oh, you gotta be kidding me.

3    You think that I'm going to relitigate those

4    issues that have been litigated once, the

5    liability has been litigated once, and I thought

6    that's the whole point of lifting the Stay.  Quite

7    frankly, if you all want me to decide whether

8    somebody goofed something up, come on back here.

9         MR. SPECTOR:  Your Honor, I think  --

10        THE COURT:  Why should I retry issues

11   that have been tried in State Court?

12        MR. SPECTOR:  Well, because I think Mr.

13   --  I think again, I'll let Mr. Hail speak for us,

14   but I think the answer is, if they're not barred

15   by a collateral estoppel theory or res judicata

16   theory, then we're permitted to make those claims

17   in the bankruptcy court.

18        THE COURT:  I'm struggling with that, but

19   at least we both have our answer.  It's

20   everything, Mr. Roberson.  You didn't mishear.  I

21   did, believe it or not.

22        MR. ROBERSON:  Your Honor, Mr. Hail and

23   Mr. Spector remind me of something that quite

24   frankly, I guess further discombobulates me, I

25   attended the DEI Confirmation hearing, and at that

1  hearing Mr. Spector argued the objections to that

2  Confirmation and Plan based on impairment.

3        And the Court said, "What are your

4  claims, Mr. Spector?"

5        Mr. Spector said, and I'm paraphrasing, I

6  don't have the transcript in front of me, "Your

7  Honor, we have the right to indemnity for legal

8  fees of approximately $800,000." And you ordered

9  the estate to set aside $800,000 if, as and when

10 that issue was tried.

11       We now know, I now know that at least 275

12 of that was an absolute duplicate, and I think

13 almost all of it was a duplicate if it's already

14 been tried in State Court, but nonetheless, there

15 was 800,000 escrowed.

16       But as far back as November the 24th, my

17 brain, and I assume the Court's brain was saying,

18 we're limiting  --  this is limited to attorneys'

19 fees.

20       We go to a Status Conference, attorney's

21 fees, and maybe this other Judgment.

22       Then we go to all 21, so I'll argue all

23 21.

24       Again, Your Honor, I would point out what

25 may be a judicial admission by them, their own

1    pleading in Response to our Summary Judgment says

2    they seek only fees and expenses.

3            Your Honor, the core issue we have here

4    today, in my mind, we have no disagreement.

5            May I have Slide Number 5, please.

6            The Court will recall that the Stay was

7    lifted to allow the State Court Appeals to

8    continue.

9            What I have before the Court on the

10   Screen, hopefully the Court can read it, is

11   Mr. Spector's pleading in which he says, "Because

12   of the Rooker-Feldman Doctrine operation to deny

13   subject matter jurisdiction to this Court to

14   review issues subsumed within the Final Judgment."

15           I could not agree with him more, and I

16   think the Court essentially said that a moment

17   ago.

18           By his admission, if a claim is subsumed

19   in a Final Judgment, it's subject to Rooker-

20   Feldman and this Court cannot relitigate.

21           So, the issues is:  What was subsumed in

22   the Final Judgment.

23           Let's first look at what was pled at

24   trial.

25           May I have Slide Number 6, please.

1    Now, under Slide Number 6, there's

2    actually three pages.  The first page is Page 4 of

3    the Third Amended Counterclaim which was live at

4    the time of the Judgment, and it is a count for

5    Declaratory Judgment asking the Court to indemnify

6    the Defendants for all their attorneys' fees and

7    costs in the lawsuit pursuant to Annex paid to

8    Annex A --

9        THE COURT:  Who's the indemnification.

10       MR. ROBERSON:  -- is the indemnification,

11   Page 4 of the Agreement.

12       And the Court obviously recalled that

13   from before we got in here today.

14       Let's go to the next page.

15       The next page is a Breach of Contract

16   count in the Third Amended Counterclaim, and you

17   can see there, the Plaintiffs  -- excuse me  --

18   Impact says that the Plaintiff Dorado,

19   "Unequivacally refuses to make any payment due

20   under the terms of the Agreement, or indemnify

21   Defendants in any way."

22       Further down on the page, it says:

23   "Dorado's refusal to pay the Defendants costs and

24   expenses or offer indemnity of any kind."

25       I read that to be a count for breach of

1 an indemnity provision, a breach of contract for

2 failure to indemnify.

3          Next page, please.

4          And the sixth page of that same, Third

5 Amended Counterclaim is a count for attorneys'

6 fees, Paragraph 20.  "We seek all attorneys' fees

7 and costs incurred in this case."

8          THE COURT:  But, of course, pursuant to

9 38001.

10         MR. ROBERSON:  Pursuant to 38001, or --

11 pursuant to 38001.

12         THE COURT:  In this Section.  Obviously,

13 --

14         MR. ROBERSON:  In this Section.

15         THE court:  -- in the indemnity, they've

16 asked for a declaration that they're entitled to

17 be indemnified for that.

18         MR. ROBERSON:  Correct.  They further, as

19 you can see in Paragraphs 19 and 21 seek

20 attorneys' fees under other theories, including

21 --

22         THE COURT:  Of course, yes.

23         MR. ROBERSON:  -- 3709.

24         THE COURT:  Yes.

25         MR. ROBERSON:  There's no doubt that this

1    indemnity claim was live in ** Mesh's Affidavit

2    which is before the Court, indicates he's reviewed

3    the pleadings on file and this Third Amended

4    Counterclaim was neither nonsuited or dismissed.

5          Did Impact seek a recovery on its

6    indemnity claims?

7          May I have the next slide, please.

8          Your Honor, this is an excerpt from the

9    second Motion for Summary Judgment filed by

10   Impact, and I believe Blue Lion in the State Court

11   lawsuit where they're seeking via a Summary

12   Judgment a declaration  --  or a Summary Judgment

13   for their Declaratory Judgment Count for

14   attorneys' fees.

15         Next page, please.

16         The same Summary Judgment, they are

17   seeking a Summary Judgment for indemnity pursuant

18   to Annex A of the Letter Agreement, again, it's

19   their breach of contract count, and they are

20   clearly seeking affirmative relief.

21         If a cause of action is pled, how does a

22   party remove it from a lawsuit?  How do you get it

23   out of and away from the effect of a Mother

24   Hubbard clause?

25         Next slide, please.

1    Rule 162 tells us that "Anytime before

2  the Plaintiff has introduced all of his evidence

3  of the rebuttal evidence, the Plaintiff may

4  dismiss the case or take a nonsuit which shall be

5  entered in the Minutes."

6    Then Mesches' Affidavit indicates that

7  the Third Amended Counterclaim was neither

8  amended, withdrawn, removed or nonsuited, and that

9  there's no entry in the State Court Minutes of

10  such an action by the State Court Judge.

11    It's undisputed that the indemnity counts

12  in the Third Amended Counterclaim are not

13  dismissed or nonsuited, they were live at the time

14  of trial, and if there's a Mother Hubbard clause

15  in the Final Judgment, then I believe they were

16  disallowed by the Court.

17    Let's take a look at the Final Judgment.

18    Slide 9, please.

19    Your Honor, this is the last page of the

20  Final Judgment entered by Judge Greg Smith,

21  February 4th, 2008, last paragraph:  "All relief

22  not expressly granted herein is denied. This

23  Judgment finally disposes of all claims and all

24  parties and is appealable Final Judgment."

25    That's as classic a Mother Hubbard clause

1    as I've seen.

2           I believe the effect of that clause is to

3    disallow anything that was pled, and what was pled

4    was indemnity.

5           Now, in their Response, they take the

6    position that because indemnity was not presented

7    to the Jury, that it was somehow taken out of the

8    lawsuit.  The entire Jury Charge is Exhibit 9 to

9    their Response, and I did not repeat the entire

10   Charge because I didn't think it was necessary to

11   do so.

12          The entire Charge  --  a review of the

13   entire Charge will reveal what they admit which is

14   that indemnity was not presented to the Jury.

15          Two questions, though, that I do want to

16   focus on.  Question Number 4, question put to the

17   Jury and answered by the Jury:  "Did any of the

18   following misappropriate Dorado's trade secrets,

19   if any?"  Part of the trade secret question

20   involves a definition of "the confidential

21   relationship which is a relationship based on fair

22   dealing and good faith."  The Jury found that all

23   4 of the Impact claimants did misappropriate trade

24   secrets, and thus, in my view, breached a

25   confidential relationship and acted in bad faith.

1        The next question I want to focus on is

2    Question 15 of the Charge.

3        Question 15 asks:  "If Impact and/or Blue

4    Lion acted with unclean hands."  The Court's

5    Charge to the Jury with a definition of unclean

6    hands as "Conduct which is inequitable, unfair,

7    dishonest or fraudulent and deceitful with regard

8    to the controversy in issue."

9        The Jury found "yes" that they had acted

10   with unclean hands.

11       THE COURT:  But that was in context of

12   the ** Quantomaro claim, as I understand it which

13   is not a claim upon which they elected recovery.

14       MR. ROBERSON:  It is a claim that they

15   chose not to recover, but they reserved it as an

16   alternative theory of recovery, and if we're

17   talking about all 21 counts, it's in the list of

18   21 that we're here on today.

19       Your Honor, if you have a pleading that

20   pleads a count, and you do not put on evidence on

21   that count and you do not present it to the Jury,

22   under State law you have waived that cause of

23   action.

24       Let me show you Texas Rules of Civil

25   Procedure 279.  279 says "On appeal, all

1   independent grounds of recovery" in this case, the

2   pled indemnity claims, "not conclusively

3   established under the evidence and the element

4   (sic) of which is submitted or requested are

5   waived." So, it's either got to be submitted to

6   the Jury or there's got to be evidence at the

7   charge conference it was requested.

8         There's no evidence that it was either

9   submitted or requested. I think under Rule 279,

10  the failure to submit the pleaded counts of

11  indemnity result in the waiver of indemnity.

12        THE COURT: Okay. So, by requested, you

13  mean that they asked the Judge to submit it to the

14  Jury, and the Judge declined --

15        MR. ROBERSON: Correct. That's how I

16  interpret it

17        THE COURT: -- which would then be an

18  issue presumably taken up on appeal as well,

19  though?

20        MR. ROBERSON: That's how I would

21  interpret it.

22        Your Honor, they admit, in fact, they

23  argue in their Response that because it was not

24  submitted to the Jury, that indemnity was not

25  before the Court in the State Court action. I

1    think failure to take it out of the lawsuit by

2    nonsuiting it, and then the combined  --  or

3    compounding problem of leaving it in and not

4    presenting it to the Jury is essentially a double

5    whammy.  162 and 279 I think say, You got to get

6    it out or you're at risk of Mother Hubband, and if

7    you leave it in and don't charge the Jury with it,

8    you waive it.

9          So, I think under Texas law, the Impact

10   claimants cannot now argue they are entitled to

11   relief under an indemnity theory.  By not

12   presenting the indemnity relief to the Jury, the

13   Impact claimants waived any right to now seek

14   recovery for indemnity.

15         Now, let's talk about what I'll call the

16   "Third Problem with this Discussion."

17         There is law in Texas that says that an

18   indemnity claim arises when the Judgment is

19   entered against the Indemnitee.  Now, it's an

20   accrual theory.  And there's case law that says

21   that.

22         THE COURT:  Well, for lack of a better

23   word, that's the general rule.

24         MR. ROBERSON:  I think that's the general

25   rule.  And that's I think the general rule in

1   Texas, and the case most often cited "Ingersol-

2   Rand".

3            There are, however, exceptions to that

4   rule.

5            THE COURT: Getty Oil.

6            MR. ROBERSON:  Getty Oil is a very good

7   exception, and I'm glad the Court raised that

8   because Eddy Oil instructs us what you have to do.

9            Getty Oil says if you file any kind of

10  affirmative relief  --  in Ingersol-Rand there was

11  no affirmative relief.  Getty says if you file for

12  affirmative relief of any kind, as long as it's

13  related to the same subject matter, you become a

14  plan (sic) for purposes of res judicata, and you

15  must bring all of your causes of action.

16           Now, I say to myself:  How do you square

17  that?  How does somebody have a accruing cause of

18  action and be obligated to bring?  Well, Getty

19  answers that.

20           THE COURT:  Because it was permissive,

21  according to Getty.

22           MR. ROBERSON:  It's permissive, and you

23  can reserve in your cause of action for the

24  ultimate determination by the Court.

25           I believe that law in Getty, as also

1    discussed in the Texas Transportation case and the

2    Team Promotions case which we cite, instruct us

3    what should have happened here.

4           Once the Impact Group pled breach of

5    contract, declaratory judgment, sought their

6    attorneys' fees which were clearly affirmative

7    relief, they had to bring the indemnity cause of

8    action, and if they didn't  --  and I believe they

9    did, I think it's clear they did  --  but if they

10   didn't, then I believe they're subject to res

11   judicata and cannot now bring it.  I think they're

12   stuck.

13          THE COURT:  Do you think that -- I heard

14   you say it more broadly than I expected you to, so

15   let me just pick at it a minute.

16          Had they just counter claimed for

17   attorney fees, had they just counter claimed for

18   breach of contract and demanded their attorneys'

19   fees under 38001, not raised indemnity at all,

20   would Ingersol-Rand or Getty govern?

21          MR. ROBERSON:  Getty.

22          THE COURT:  So, any claim, irrespective

23   of whether it's the indemnity claim?

24          MR. ROBERSON:  It's any claim that arises

25   out of the same subject matter.  The breach of

1    contract claim here clearly arises out of the

2    Letter Agreement, and the indemnity claim that

3    we're talking about now is part of that same

4    Letter Agreement.  It's the fourth page of that

5    Letter Agreement.

6              THE COURT:  Well, I'm perplexed about

7    something, and that is, where is the

8    confidentiality agreement that Dorado obtained a

9    Judgment against Impact with respect to?  Because

10   I -- is it a separate agreement from the

11   engagement agreement that has the indemnification

12   annexed?

13             MR. ROBERSON:  Your Honor, I don't know

14   that we have any evidence before the Court on

15   either side.  My understanding is that yes, there

16   is a Confidentiality Agreement I believe it's

17   contemplated by the Letter Agreement, but my

18   understanding is they're two separate agreements.

19             THE COURT:  Because I looked in the

20   appendices and never found a Confidentiality

21   Agreement and I never found a Confidentiality

22   Provision in the Engagement Agreement, so wasn't

23   -- and that's neither here nor there.

24             But, so, you sued for breach of

25   Confidentiality Agreement, as I understand the

1   historical predicate.

2        MR. ROBERSON:  I think misappropriation

3   of trade secrets, and I believe there was a breach

4   of confidentiality, but I think what the Jury

5   found was that there was a misappropriation of the

6   trade secret.

7        THE COURT:  All right, and you're right,

8   that was loose language on my part.  But the trade

9   secret was the confidential information?

10        MR. ROBERSON:  Correct.

11        THE COURT:  So, you sued for

12   misappropriation of a trade secret.  Did Impact

13   -- was Impact obligated to sue -- to

14   counterclaim for breach of contract?

15        MR. ROBERSON:  If they are two separate

16   agreements, I would say it would be a permissive

17   counterclaim, not compulsory, but once you bring

18   that counterclaim clearly related to this -- I

19   mean, clearly arising out of the same facts, all

20   part of this relationship and the transactions

21   between these parties, I think Getty tells us that

22   once you seek affirmative relief, then you become

23   the Plaintiff, and res judicata, the doctrine of

24   res judicata tells us if you ask for part of your

25   relief, you have to ask for it all even if it's